

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-29-2006

# USA v. Harris

Precedential or Non-Precedential: Precedential

Docket No. 05-2016

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Harris" (2006). *2006 Decisions*. Paper 3.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/3

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-2016

———

UNITED STATES OF AMERICA

v.

WILLIAM HARRIS,

*Appellant*

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 04-cr-00423)
District Court Judge: Honorable William J. Martini

———

Argued: December 12, 2006

Before: FUENTES and VAN ANTWERPEN, *Circuit Judges*,
and PADOVA,* *District Judge*

———————

*The Honorable John R. Padova, District Judge of the Eastern
District of Pennsylvania, sitting by designation.

(Filed: December 29, 2006)

Robert Little, Esq. (Argued)
515 Valley Street
Suite 170
Maplewood, NJ 07040

    *Counsel for Appellant*


George S. Leone, Esq.
Mark E. Coyne, Esq. (Argued)
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

    *Counsel for Appellee*

─────

OPINION OF THE COURT

─────

VAN ANTWERPEN, *Circuit Judge*.

A jury in the District of New Jersey convicted William Harris of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Harris now appeals from that conviction, claiming he was denied a fair trial because (1) he was improperly cross-examined by the

2

government about the credibility of police witnesses, (2) the prosecutor improperly vouched for the credibility of government witnesses during summation, and (3) the District Court did not permit him to question a witness about testimony in an unrelated criminal case that may have shown a particular racial bias on the part of the witness. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

I.

On May 8, 2003, officers of the Newark Police Auto Theft Task Force approached Harris while he was in his car and arrested him for possessing a handgun. At trial, Harris and police witnesses provided very different accounts of Harris' roadside arrest and his subsequent detention at the police station. Harris' testimony conflicted with that of police with respect to how and why the officers approached Harris, what Harris had done before his arrest, the discovery and origin of the weapon found in Harris' vehicle, and the origin and contents of a signed statement produced by police.

At trial, after police witnesses and Harris gave incongruous testimony, the prosecutor cross-examined Harris about whether police witnesses had lied. As part of her cross-examination, the prosecutor restated various assertions of police witnesses that directly contradicted Harris' testimony and then asked Harris if it was his testimony that the police witnesses were lying. For example, the prosecutor asked, "Mr. Harris, it's your testimony that when Detective Walker told this jury that you were holding a gun in your hand that

3

night, he was lying?" Harris' App. at 147A.[1] At no time during this examination did Harris object to these questions.

After cross-examining Harris, the prosecutor made the following statement during her summation: "So it's the defendant's theory, as you heard, that it's a big conspiracy . . . that this gun just appeared, this statement was fabricated, this statement was forged . . . *and that then these officers came into federal court, each one of them, with a collective 37 years of experience in the Newark Police Department, and*

---

[1]Other similar questions to which Harris now objects include the following: (1) "So it's your testimony, then, that Officer O'Connor, when he came to court and explained how he typed everything, he said, he - - that he was lying?" Harris' App. at 123A. (2) "And it's your testimony that Sergeant Ferreira, when he testified and said how he showed your statement to you, he was lying?" Harris' App. at 123A. (3) "And it's your testimony that when he described how you were taking the gun from your front waistband and putting it on the floor of your car, he was lying?" Harris' App. at 147A-148A. (4) "It's your testimony that Officer O'Connor just made that up?" Harris' App. at 163A. (5) "Sir, it's your testimony that Sergeant Ferreira was lying to this jury when he said that he asked you if you swore to the contents of the form?" Harris' App. at 177A. (6) "And how about when Officer O'Connor said that you signed this statement, that he saw you sign the statement, was he lying?" Harris' App. at 177A. (7) "So when Officer O'Connor said that you signed the form and he saw you sign the form, he was lying?" Harris' App. at 177A.

4

*they put all that on the line to come in and tell you something the defendant says wasn't true*." Harris' App. at 208A (emphasis added). Although Harris now claims this statement improperly bolstered the credibility of police witnesses, at no time during the prosecutor's summation did Harris object.

Just before trial, the District Court made a preliminary ruling with respect to a motion *in limine* filed by the government. The motion sought to prevent Harris from questioning one of the police officers involved in Harris' arrest about an unrelated criminal case in which the officer's testimony may have shown a bias against Hispanics. The District Court, in granting the government's motion, explained that the African-American officer's alleged bias against Hispanics was not relevant in Harris' case because Harris is not Hispanic (he is African-American) and because such bias would not be relevant to the officer's credibility. After this preliminary ruling, Harris did not seek to admit evidence of the arresting officer's alleged bias.

II.

*A. Prosecutor's Questions to Harris About Police Witness Credibility*

Harris first claims that the prosecutor improperly influenced the jury's determinations of witness credibility by repeatedly asking Harris whether various police witnesses had lied in an effort to convict him. Because Harris did not object to any of the allegedly improper questions at trial, both parties agree that we review this challenge under the plain

5

error standard of section 52(b) of the Federal Rules of Criminal Procedure. *See United States v. Johnson*, 302 F.3d 139 (3d Cir. 2002).

Under plain error review, we may grant relief if (1) the District Court committed an "error," (2) the error is "plain," and (3) the error "affect[s] substantial rights." *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993). An error is "[a] deviation from a legal rule." *United States v. Russell*, 134 F.3d 171, 180 (3d Cir. 1998) (citation omitted). It is "plain" when it is "clear under current law." *Olano*, 507 U.S. at 734. And, it "affect[s] substantial rights" when it is "prejudicial," i.e., it "affect[s] the outcome of the district court proceedings." *Id.* Even if these requirements are satisfied, the court should only exercise discretion to grant relief "'in those circumstances in which a miscarriage of justice would otherwise result.'" *Id.* at 736 (internal citations omitted).

Of the federal courts of appeals that have examined the propriety of questions posed to a criminal defendant about the credibility of government witnesses, it appears nearly all find that such questions are improper. *See United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006); *United States v. Williams*, 343 F.3d 423, 438 (5th Cir. 2003); *United States v. Sanchez*, 176 F.3d 1214, 1219-20 (9th Cir. 1999); *United States v. Sullivan*, 85 F.3d 743, 749 (1st Cir. 1996); *United States v. Boyd*, 54 F.3d 868, 871 (D.C. Cir. 1995); *United States v. Richter*, 826 F.2d 206, 208 (2nd Cir. 1987); *but see United States v. Williamson*, 53 F.3d 1500, 1523 (10th Cir. 1995) (characterizing as unpersuasive the reasoning set forth

6

in *Richter* as to why such questions should not be allowed). These other courts find such questions force defendants to assess the credibility of others who have testified at trial–a function exclusively reserved to the jury.[2] *See, e.g., Thomas*, 453 F.3d at 846.

However, despite their disapproval, courts of appeals generally have not reversed a conviction solely because such questions were posed unless opposing counsel specifically objected to them. *Compare Thomas*, 453 F.3d at 846 (concluding questions did not influence jury's verdict); *Williams*, 343 F.3d at 438 (concluding that such questioning, "though inappropriate, is not reversible error"); *Sullivan*, 85 F.3d at 750 (finding questions were harmless); *Boyd*, 54 F.3d at 871 (finding defendant "suffered no prejudice from the prosecutor's improper questions") *with United States v. Geston*, 299 F.3d 1130, 1136 (9th Cir. 2002) (explaining "it is reversible error for a witness to testify *over objection* whether a previous witness was telling the truth") (emphasis added).

Today, we follow our sister circuits and hold that asking one witness whether another is lying is inappropriate. Such questions invade the province of the jury and force a witness to testify as to something he cannot know, i.e., whether another is intentionally seeking to mislead the tribunal. In addition, as Harris' counsel explained during oral

---

[2]*See generally McCormick on Evidence* § 43 n. 8 (6th ed. 2006) (explaining why it is usually impermissible to ask one witness about another witness' credibility).

argument, such questions force defendants into choosing to either undermine their own testimony or essentially accuse another witness of being a liar.

However, we are not unmindful that "[i]t is essential . . . to the proper functioning of the adversary system that when a defendant takes the stand, the government be permitted proper and effective cross-examination in an attempt to elicit the truth." *United States v. Havens*, 446 U.S. 620, 626-27, 100 S.Ct. 1912, 64 L.Ed.2d 559 (1980). Consequently, such questions would obviously be proper if a defendant opened the door by testifying on direct that another witness was lying. *See, e.g., Boyd*, 54 F.3d at 871 (explaining that had the defendant "testified on his own that the officers were lying, such questions might be proper"). Similarly, it is often necessary on cross-examination to focus a witness on the differences and similarities between his testimony and that of another witness. This is permissible provided he is not asked to testify as to the veracity of the other witness. *See, e.g., United States v. Gaines*, 170 F.3d 72, 81-82 (1st Cir. 1999) (explaining that questions that avoid the "'L' word" and call upon a witness to say whether another was "mistaken" or "wrong" may be acceptable); *United States v. Gaind*, 31 F.3d 73, 77 (2d Cir. 1994) (explaining that "[a]sking a witness whether a previous witness who gave conflicting testimony is 'mistaken' highlights the objective conflict without requiring the witness to condemn the prior witness as a purveyor of deliberate falsehood, i.e., a 'liar.'"). We do not foreclose the possibility that other circumstances may make a question about another witness' veracity appropriate.

8

Although we find the District Court erred in permitting the prosecutor to ask Harris whether police witnesses had lied, we find the error was not "plain." The Supreme Court has never ruled on the propriety of these questions, and, until now, neither had this Court in a precedential opinion. Furthermore, it is not likely that such questions, standing alone and without objection, would have "affected the outcome of the district court proceedings." *Olano*, 507 U.S. at 734. In conclusion, the District Court's error was not clear under the law as it existed during Harris' trial and this challenge must fail.

*B. Alleged Vouching by Prosecutor*

Harris also alleges the prosecutor impermissibly vouched for the credibility of police witnesses by indicating in her summation that they would be jeopardizing their careers if they were to lie in court. Because Harris did not object to the alleged vouching at trial, we review this claim under the plain error standard. *See United States v. Brennan*, 326 F.3d 176, 182-86 (3d Cir. 2003); *United States v. Walker*, 155 F.3d 180, 187-88 (3d Cir. 1998).

As the Supreme Court explained in *United States v. Young*, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). With respect to improper vouching, two criteria must be met: "(1) the prosecutor must

9

assure the jury that the testimony of a Government witness is credible; and (2) this assurance [must be] based on either the prosecutor's personal knowledge, or other information not contained in the record." *Walker*, 155 F.3d at 187.

When viewed in the context of the entire summation, the prosecutor's statement in this case was isolated and made in response to Harris' allegations that the police forged his signature on a confession and planted a weapon in his vehicle. In addition, at the end of the trial, the District Court gave clear instructions to the jury regarding the evidentiary value of statements by lawyers, the jury's exclusive role in making determinations of credibility, and the weight of police witness testimony relative to that of other evidence. Overall, while the prosecutor's comment may have relied on information not in the record, the District Court's jury instructions and the isolated nature of the comment prevented the kind of "miscarriage of justice" that would require reversal. *Olano*, 507 U.S. at 736 (internal citations omitted).

*C. District Court's Ruling That Excluded Evidence of Alleged Racial Bias*

Finally, in a supplemental brief,[3] Harris claims the

---

[3]The supplemental brief was filed by counsel and raised an issue Harris attempted to present in a *pro se* brief. Local Appellate Rule 31.3 prohibits the filing of *pro se* supplemental briefs except in cases in which counsel plans to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d

10

District Court's decision to prevent him from questioning an arresting officer about an alleged racial bias violated his rights under the Confrontation Clause.  Harris asserts we should review his claim *de novo*.  In contrast, the government argues Harris did not preserve this issue for appellate review and, as a result, we should review it for plain error.

The law on this point is clear: "[A] party who unsuccessfully opposes an *in limine* motion to exclude certain evidence can appeal that ruling without an offer of proof at trial if the district court was fully informed and made a pretrial ruling with no suggestion that it would reconsider that ruling at trial.  Concomitantly, where a district court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 519 (3d Cir. 1997).

The District Court in this case made a "preliminary ruling" with respect to the government's motion *in limine* at the outset of the case.  Specifically, the District Court Judge stated, "my preliminary ruling will be that you're not going to get into it."  Gov't App. at 103.  After this ruling, Harris did not attempt to offer evidence of the officer's bias at trial.  For this reason, we will apply the plain error standard.[4]

493 (1967).

[4]Concluding that the District Court's ruling was final and, as a result, applying the abuse of discretion standard would

11

District courts retain "'wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir. 2005) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 678-79, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)). In deciding whether a specific limitation violates a defendant's rights under the Confrontation Clause, we consider "(1) whether the limitation significantly limited the defendant's right to inquire into a witness's motivation for testifying; and (2) whether the constraints imposed fell within the reasonable limits that a district court has the authority to impose." *Id*. (citation omitted).

Harris alleges that testimony by a police witness in an unrelated criminal matter is evidence of that officer's bias against Hispanics. Harris further argues that this bias affected the officer's testimony in this case, even though Harris and the witness were both African-American. The District Court ruled that, even if the officer's earlier testimony supported an inference that he held a bias against Hispanics, there was no basis to believe that race was a factor in the officer's decision to stop Harris, an African-American.

We agree with the District Court's conclusion and find no plain error. Assuming the officer held a bias against

---

not change our decision with respect to this claim.

12

Hispanics, it is not at all apparent how such a bias would factor into the officer's decision to stop or testify against an African-American. Furthermore, given the District Court's wide latitude in these matters, we find that excluding evidence of the alleged bias was well within the District Court's discretion.

## III.

For the foregoing reasons, we will affirm the District Court's Order of judgment and conviction.