**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 13a1017n.06

No. 12-5009

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Dec 05, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| SCOTTIE MARTIGUS BAILEY, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |

Before: DAUGHTREY, SUTTON, and KETHLEDGE, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge. Defendant Scottie Martigus Bailey was convicted by a jury of distributing 50 or more grams of crack cocaine. He now appeals his conviction, arguing that prosecutorial misconduct deprived him of his right to a fair trial and that he was denied effective assistance of counsel during the trial. We find no reversible error and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In August 2009, Scottie Bailey ran into a long-time acquaintance, Taurice (T.J.) Simmons, in a restaurant in Bowling Green, Kentucky. The two men exchanged telephone numbers and, sometime thereafter, spoke on the phone. During their conversation, Simmons, who had recently been paroled from prison on drug-trafficking charges, inquired about the possibility of buying drugs from Bailey, who had his own history of drug convictions. According to Simmons's testimony,

Bailey said that he could sell him crack cocaine for $800 an ounce. Simmons responded that "as soon as [he] got everything together," he would "give [Bailey] a call," presumably to arrange a buy. Bailey disputed Simmons's statement, testifying that the only drug he ever offered to sell Simmons was marijuana. What is not disputed is that Simmons – who, unbeknownst to Bailey, was working as a confidential informant for the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) – reported the conversation to his handler at the ATF, Special Agent David Hayes.

Agent Hayes, who was at the time investigating crack-cocaine trafficking in the Bowling Green area, met with Simmons that night and arranged to have him make a monitored phone call to Bailey to discuss the potential drug deal. Simmons ended up making two recorded phone calls to Bailey. During those conversations, the two men discussed the drug deal but did not reach agreement to sell – apparently due to Simmons's inability to provide money for the drugs in advance.

In order to allay what he perceived to be Bailey's growing suspicions about the deal, Simmons testified that he bought a half-ounce of crack cocaine from Bailey a short time later. He also testified, however, that Agent Hayes knew nothing about the sale at the time, making it an illegal purchase, outside the scope of his responsibilities as a confidential informant. The strategy apparently worked because, within a few days, Bailey agreed to sell Simmons two ounces of crack cocaine. Simmons informed Agent Hayes that Bailey had agreed to sell him the drugs. Hayes then arranged for Simmons to make another monitored call to Bailey to discuss the logistics of the sale. During the conversation, the two men agreed to meet at a McDonald's restaurant. At no point

during the phone call, however, did either Simmons or Bailey specify what kinds of drugs were to be sold.

ATF agents prepared Simmons for the controlled buy by searching his person and his car thoroughly for drugs, money, or contraband. They also confiscated all the money that Simmons had on him at the time. The agents then gave Simmons an audio recording device, as well as $1,600 in "buy money." Simmons drove to the McDonald's where the two men had agreed to meet. When he arrived at the restaurant, he called Bailey, who told him to drive across the street to the back parking lot of a Ford dealership. Once he got there, Bailey told Simmons to go to yet a third location. When Simmons arrived at that location, he saw Bailey stopped in his car at a stop sign. Bailey then beckoned Simmons to follow him to a nearby apartment complex. Upon arrival, Bailey got out of his car, walked up to Simmons's car, and set a paper bag from the White Castle hamburger chain on the backseat. Simmons looked in the bag and then, according to his testimony, gave Bailey the $1,600 in cash.

Once the transaction was completed, Simmons returned to Agent Hayes and gave him the White Castle bag. Agent Hayes searched the bag and discovered two baggies of crack cocaine in a hamburger box. ATF agents also searched Simmons's car again but found no money, drugs, or other contraband in the car. Lab tests later revealed the crack cocaine in the two bags to weigh approximately 59 grams.

More than a year later, after waiting to discover the identity of Bailey's supplier, Agent Hayes presented the case to a grand jury, which returned an indictment against Bailey. He was

arrested a month later, after officers found him hiding behind a recliner in the house of his girlfriend, Brittany Carrick. Officers searched Bailey and found more than $1,000 in cash in the front pocket of his shirt. They took Bailey to the U.S. Marshal's office in the federal courthouse in Bowling Green, and Agent Hayes read him his Miranda rights. Bailey signed a rights waiver stating that he was willing to talk with the agents. Hayes then interrogated Bailey about the drug deal. However, Hayes did not record the interrogation because – as he testified later at trial – he did not have his recorder with him at the time. As a result, there was a significant dispute later about what transpired during the interrogation. Hayes testified that Bailey admitted that the cash that officers found in his front pocket came from "selling pieces" of crack cocaine. Bailey testified to the contrary that he told Hayes during the interrogation that "the only kind of dope that [he] ever sold was marijuana" and that if Hayes had arrested him for selling crack cocaine, "he had [him] for the wrong thing."

Bailey was detained pre-trial and, while in jail, made a number of phone calls in which he discussed the charges against him. In one recorded conversation, Carrick told Bailey she did not understand why he had been arrested. In reply he told her that he had a "fed[eral] case – I sold two ounces of dope to somebody. That's what they're trying to say . . . . They're trying to say that I sold 56 grams of cocaine." In another phone call three days later, in response to the question "What got you this lick?" Bailey told an unknown man that "TJ . . . I was gonna grab something for him and he was gonna flip it around . . . . I know what I did though and it ain't nothing. He used me for tackle bait."

While awaiting trial, Bailey wrote a letter to the district judge complaining about his attorney, who, he claimed, "has just started his practice and in so many ways . . . doesn't understand things so clear." The judge interpreted this letter as a *pro se* motion for appointment of new counsel and referred the matter to the magistrate judge who held an *in camera* hearing to discuss the issue with Bailey and his appointed lawyer, Dwight Montae Burton. After Bailey told the magistrate judge that he did not wish Burton to be removed but merely wanted the court to appoint additional counsel to assist him, the judge denied the motion as moot.

A two-day trial ensued, following which the jury found Bailey guilty on the single count on which he was charged. The district court subsequently sentenced Bailey to 180 months in prison.

## DISCUSSION

Bailey challenges his conviction on two grounds. First, he argues that the prosecutor engaged in misconduct, thereby depriving him of his right to a fair trial. Second, he argues that his trial counsel's failure to object to the prosecutor's misconduct constituted ineffective assistance of counsel.

**Prosecutorial Misconduct**

We review claims of prosecutorial misconduct *de novo*, *United States v. Stover*, 474 F.3d 904, 914 (6th Cir. 2007), engaging in a two-step inquiry. We first determine whether a prosecutor's conduct was improper, *United States v. Henry*, 545 F.3d 367, 376 (6th Cir. 2008), and, if so, whether the impropriety was flagrant. *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). To determine whether an impropriety was flagrant, we consider four factors: "(1) [W]hether the

conduct and remarks of the prosecutor tended to mislead the jury or prejudice the defendant; (2) whether the conduct or remarks were isolated or extensive; (3) whether the remarks were deliberately or accidentally made; and (4) whether the evidence against the defendant was strong." *Id.*

Because Bailey did not object at trial to the prosecutor's actions, review in this case is limited to plain error. *See United States v. Collins*, 78 F.3d 1021, 1039 (6th Cir. 1996). In order to challenge his conviction successfully, Bailey must therefore demonstrate not only that the prosecutor's errors were flagrant but also that they were so "exceptionally flagrant" as to constitute plain error. *See United States v. Davis*, 514 F.3d 596, 613-615 (6th Cir. 2008). In this effort, he must show that the errors were not only "plain, *i.e.*, obvious or clear" but also that they "affected [his] substantial rights and . . . that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998).

Bailey argues that the prosecutor, Jo Lawless, acted improperly in five ways. We agree that some of the statements that he identifies appear to be questionable, if not downright improper, under the law of this circuit. However, we also conclude that none is so flagrant as to constitute plain error.

*Impropriety #1*

First, Bailey argues that Lawless acted improperly when she told the jury during her closing remarks that, on the street, "Dope and marijuana are different things. Dope is crack cocaine." Lawless made this assertion to support her argument that when Bailey told his girlfriend that he "sold two ounces of dope to somebody," he was referring to crack cocaine, not marijuana. Bailey argues that the prosecutor acted improperly in making this claim because, in doing so, she presented prejudicial facts that were not supported by the evidence introduced at trial. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) ("It is improper for a prosecutor, during closing arguments, to bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial.'") (quoting *United States v. Wiedyk*, 71 F.3d 602, 610 (6th Cir. 1995)). In response, the government acknowledges that there is no proof in the record to support the prosecutor's assertion that, on the street, the term "dope" refers only to cocaine, not to marijuana. Indeed, the only person to make this assertion during the trial was Lawless herself. Clearly, the comment was not proper, but the impropriety does not appear to be sufficiently flagrant to warrant reversal under plain-error review.

As the Supreme Court made clear in *United States v. Young*, 470 U.S. 1, 16 n.14 (1985), in order to find that an act of prosecutorial misconduct affected a defendant's "substantial rights" and, therefore, was plainly erroneous, a reviewing court must find that the error "had an unfair prejudicial impact on the jury's deliberations." In this case, significant evidence supported the conclusion that Lawless drew, namely, that when Bailey told his girlfriend that he "sold two ounces of dope to somebody," he was referring to crack cocaine and not marijuana. Chief among these is the phone call itself, which the jury heard in its entirety. Moreover, shortly after telling Carrick that he "sold two ounces of dope to somebody," Bailey can be heard in the recording stating plainly: "That's what

they're trying to say. . . . They're trying to say that I sold 56 grams of cocaine." At that point, Bailey quite clearly equated two ounces of "dope" to 56 grams of cocaine. Bailey's own statements therefore demonstrate that, at least in this context, when he used the term dope he was referring to cocaine. For this reason, we cannot conclude that the prosecutor's improper statements about the street meaning of the word "dope" unfairly prejudiced the jury against Bailey.

*Impropriety #2*

Bailey next argues that the prosecutor acted improperly when she made remarks and elicited testimony designed to persuade the jurors that Agent Hayes would not be willing to jeopardize his career in law enforcement by perjuring himself on the witness stand. Specifically, Bailey points to two instances in which, he claims, Lawless improperly bolstered, or vouched for, Hayes's credibility. The first occurred when Lawless asked Agent Hayes on redirect: "Would you be willing to risk your career to vouch for [Simmons] and let him have a pass just to make one deal on Scottie Bailey?" Hayes replied, "No, I wouldn't." The second occurred during the prosecutor's closing remarks. In the midst of a discussion of the disputed post-arrest interrogation by Agent Hayes of Bailey, Lawless told the jury:

> You have to ask yourself, ladies and gentlemen of the jury, assessing the credibility of these witnesses, not the least of which is Special Agent Hayes. And I think I asked him this question on the stand. Was he willing to jeopardize his career for the sake of getting some sort of charge on Scottie Bailey? Did he deliberately not re[cord] it? Do we all forget things from time to time. We hoped that he had the recorder. But when you have somebody willing to talk, you want to talk to him now, because he was a major player and could give valuable information, . . . not because

you're just trying to frame somebody and flush away everything that you have worked for that.

Bailey argues that these remarks were improper because they "unfairly left the jury with the impression that despite the lack of an audio recording, the near-certainty of adverse employment consequences for fabricating a confession provided an additional assurance that the agent's version of Bailey's post-arrest statements was the correct one."

Bailey's claim that the prosecutor engaged in improper vouching or bolstering of the witness when she asked Agent Hayes whether he would be willing to jeopardize his career by making false claims about Simmons's credibility has no merit. A prosecutor improperly bolsters a witness's credibility when she "implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *United States v. Trujillo*, 376 F.3d 593, 608 (6th Cir. 2004) (quoting *United States v. Martinez*, 253 F.3d 251, 254 (6th Cir. 1992)). Improper vouching occurs, in contrast, when "the prosecutor argues evidence not in the record, or when the prosecutor supports the credibility of a witness by expressing a personal belief in the truthfulness of the witness's testimony, thereby placing the prestige of the office of the United States Attorney behind that witness." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001) (citations omitted). When Lawless asked Hayes whether he would be willing to jeopardize his career by lying about Simmons's credibility, she did not imply that either Hayes's or Simmons's testimony was corroborated by evidence known to the government but not the jury. Nor did the question express

a personal belief in the truthfulness of Hayes's testimony, or rely upon evidence not in the record at trial. She therefore engaged neither in improper bolstering nor improper vouching.

Although Bailey's claim that the prosecutor acted improperly when she cross-examined Agent Hayes is thus not persuasive, his claim that the prosecutor's closing remarks were improper is somewhat more persuasive. Lawless did not, in fact, ask Agent Hayes on the stand whether he would be willing to jeopardize his career by lying about his interrogation of *Bailey*, as she suggested in her closing remarks that she had. Instead, she asked Agent Hayes only whether he would be willing to jeopardize his career by lying about *Simmons*'s credibility. One might infer that Lawless was attempting only to draw an inference of credibility from Hayes's testimony about Simmons. Nevertheless, Lawless did not couch her assertion as an argument based on inferences from the evidence. She instead couched it as a description of what Hayes actually testified to, albeit one modified by the qualifier "I think." There one might conclude that the remark was an act of improper vouching, insofar as it argued evidence that was not on record – and in fact, simply was not true.

But, even if the prosecutor acted improperly, the impropriety was not so flagrant as to constitute plain error. Despite the comment's potential to influence or mislead the jury, the district court's instructions to the jury mitigated any possible prejudicial impact by clearly informing the jury that "[a]rguments and statements by lawyers are not evidence." *See Martinez*, 981 F.2d at 871 (holding that the prosecutor's unsupported statement in his closing argument that a government witness would not "risk his career, 18 years in law enforcement" to lie to the court did not constitute reversible error because any possible prejudice to the defendant "was ameliorated by the trial court's

instruction to the jury that 'the lawyers' statements . . . and their arguments are not evidence'").

Moreover, the remark in question was isolated, not extensive, and may have been accidental, rather than deliberately made. The fact that the evidence against Bailey was strong, even leaving aside the disputed interrogation, suggests that the prosecutor's remarks did not constitute plain error. *See United States v. Vitillo*, 490 F.3d 314, 326-327 (3d Cir. 2007) (finding improper questioning of the defendant did not constitute plain error because there was "strong evidence of guilt . . . apart from the disputed confession that gave rise to the prosecutorial misconduct").

*Impropriety #3*

Bailey also argues that Lawless acted improperly when she elicited testimony from Agent Hayes about Simmons's help in the successful prosecution of ten other crack cocaine offenses. Specifically, Bailey points to the following exchange:

> Q: Coming back to Mr. Simmons, just to wrap this up, you testified yesterday about using him quite a bit over the course of several months, 18 to 24 months?
> A: Yes.
> Q: How many people did you investigate and prosecute?
> A: There were 10 people prosecuted.
> Q: Successfully?
> A: Yes.
> Q: During that time, did he give you any information that was false or cause any problems for you with those investigations?
> A: He never did, no.

In addition, Bailey claims that Lawless acted improperly when she told jurors in closing that "TJ Simmons was working for Agent Hayes . . . they were identifying major players" and that "there were ten people over that time period who were investigated and prosecuted in federal court for drug trafficking. Mr. Simmons was involved in providing information on all of them."

Bailey is incorrect in asserting that either of these statements was improper. Federal Rule of Evidence 608(b) prohibits the use of extrinsic evidence "to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness." However, courts allow extrinsic evidence when necessary to respond to challenges to a witness's credibility made by the opposing party. *United States v. Lochmondy*, 890 F.2d 817, 820-822 (6th Cir. 1989) (finding that government was entitled to introduce evidence of a witness's contribution to other criminal prosecutions in order to rebut defendants' attacks on his credibility).

Lawless was thus entitled to ask Agent Hayes about the help Simmons provided in earlier prosecutions after the defense raised the issue of Simmons's credibility during cross-examination. As the government notes, much of the defense counsel's cross-examination of Hayes was spent asking questions about Simmons's reliability and credibility. At one point, defense counsel suggested that Simmons was "out of control" and that Agent Hayes had no way of monitoring his actions during the controlled buy.

Given the unremitting attack on the credibility and reliability of Simmons as a confidential informant mounted by the defense on cross-examination, Lawless was entitled to ask Agent Hayes questions that went to the issue of Simmons's credibility and reliability as a confidential informant

– which she did when she asked Hayes about Simmons's prior work as a confidential informant.

There was also nothing improper about the prosecutor's closing remarks. Her assertion that

Simmons helped Agent Hayes identify players in the Bowling Green crack-cocaine-trafficking

business, and that Simmons provided information on the ten people (prior to Bailey) who were

federally prosecuted for drug trafficking was fully supported by Agent Hayes's testimony. Although

Agent Hayes did not testify that the ATF was targeting "major players," the conclusion that these

were the targets of the ATF's investigation appears a reasonable inference from the evidence –

specifically, Agent Hayes's testimony that his investigation of Bailey grew out of a joint task force

between the ATF and local police targeted at cocaine traffickers in the Bowling Green area, and that

Bailey was not originally a target of the investigation, presumably because he was not a significant

enough dealer to warrant the task force's attention.

*Impropriety #4*

Bailey next argues that Lawless acted improperly when, in her cross-examination, she forced

him either to accuse other witnesses of lying or to undermine his own testimony. Bailey points

specifically to the following exchange:

> Q: So everything that Mr. Simmons testified to before this jury was a lie?
> A: Basically.
>
> Q: Everything that is on the recordings that we've seen and we've heard is a lie as
> it pertains to crack cocaine.
> A: Nothing pertains to crack cocaine.
>
> Q: And everything that Special Agent Hayes testified to in front of this jury about
> interviewing you after you were arrested was a lie?
> A: Some of it.

Q: What was a lie?

A: The part where he said that I admitted to him who the supplier was. I never told him who the supplier was. I never told him that I sold –

. . . .

Q: So if he testified that you told him who you had gotten the crack cocaine from, he's lying about that?

A: Basically.

Q: All of this is a big conspiracy to try to convict you of something that you didn't do?

A: Well, I think it speaks for itself. I mean, you're the prosecutor.

Q: Mr. Bailey, is all of this in your mind some kind of big conspiracy to convict you of something you didn't do?

Because credibility determinations are the responsibility of the jury to make, the Sixth Circuit has joined the majority of circuits in prohibiting parties from asking witnesses whether other witnesses lied, at least as a general rule. *See Arnold v. Wilder*, 657 F.3d 353, 367-68 (6th Cir. 2011); *United States v. Harris*, 471 F.3d 507, 511 (3d Cir. 2006); *United States v. Thomas*, 453 F.3d 838, 846 (7th Cir. 2006); *United States v. Williams*, 343 F.3d 423, 437 (5th Cir. 2003); *United States v. Sanchez*, 176 F.3d 1214, 1219-1220 (9th Cir. 1999); *United States v. Sullivan*, 85 F.3d 743, 750 (1st Cir.1996); *United States v. Richter*, 826 F.2d 206, 208-210 (2d Cir. 1987). The prosecutor's questions were thus clearly improper under the *Arnold* rule. As was true with respect to the other improprieties that Bailey identified, however, the error was not so flagrant as to merit reversal, given the strong evidence of Bailey's guilt. *See Arnold*, 657 F.3d at 368 (holding that improper questioning of defendant is "harmless in light of other evidence produced at trial"); *Vitillo*, 490 F.3d at 326-27.

*Impropriety #5*

Finally, Bailey argues that the prosecutor acted improperly when she asked him during cross-examination whether his prior felony conviction was for "trafficking in cocaine" (which it was) and then suggested to the jury in her closing remarks that Bailey's prior cocaine conviction demonstrated that the drug he sold to Simmons was cocaine rather than – as he claimed – marijuana. Specifically, the prosecutor told the jury:

> [Bailey] has been convicted of trafficking cocaine before. He's been in this game before . . . . This is not about marijuana, ladies and gentlemen. It is about crack cocaine.

Bailey argues that, in making this assertion, the prosecutor engaged in the kind of propensity argument barred by Federal Rule of Evidence Rule 404(b)(1), which prohibits the admission of "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Indeed, that would appear to be the case.

Parties are entitled to introduce evidence of prior convictions when necessary to impeach the testimony of a witness or defendant. *See United States v. Ramos*, 861 F.2d 461, 468-69 (6th Cir. 1988) ("When a party opens up a subject . . . [the party] cannot complain on appeal if the opposing party introduces evidence on the same subject." (quoting *United States v. Peco*, 784 F.2d 798, 805 (7th Cir. 1986))). Hence, Lawless was entitled to ask Bailey on cross-examination about his prior drug conviction because Bailey "open[ed] up the subject" when he testified on direct examination that "the only kind of dope that I ever sold was marijuana" and that if Hayes had arrested him for

-15-

selling crack cocaine, "he had [him] for the wrong thing." The question is whether the prosecutor's statement in closing argument went beyond the limits of impeachment to suggest that *because* Bailey was previously convicted for selling cocaine, the drug he sold to Simmons must have been cocaine. If so, it would constitute the kind of propensity argument that the rules of evidence prohibit. *See Michelson v. United States*, 335 U.S. 469, 475-76 (1948) ("The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge.").

We conclude that the prosecutor certainly stepped close to the line, if not actually over it, in presenting this argument. *See Washington v. Hofbauer*, 228 F.3d 689, 699-700 (6th Cir. 2000) ("[It is a] fundamental rule of evidence . . . that a defendant's 'bad character' cannot be used to argue that the defendant committed the crime for which he is being tried, or had the propensity to commit the crime."). The problem here is that the identity of the "dope" in the White Castle bag was put into serious dispute when Bailey testified that "the only kind of dope that [he] ever sold was marijuana," thus opening the door to an argument in rebuttal that on at least one occasion he had been proven to have sold cocaine. Viewed from this perspective, the use of the prior conviction as impeachment evidence ("the dope in question was cocaine, not marijuana, as the defendant claims") appears to trump its use to establish propensity ("you sold cocaine once, you must have done it again"). But, even if we were to view the prosecutor's argument as a violation of Rule

404(b)(1), we could not say that the error was sufficiently flagrant to warrant reversal under plain-error review, given the amelioriating jury instructions, the fact that Lawless made this argument on only one occasion, and the strong evidence of Bailey's guilt. Indeed, in reviewing far more dramatic and pervasive propensity arguments than the one the prosecutor made here, we have declined to find plain error, given significant proof of guilt. *See*, *e.g.*, *Cook v. Bordenkircher*, 602 F.2d 117, 119-121 (6th Cir.1979) (finding that an argument "rivaled only by a fire and brimstone orator," in which "the prosecutor exclaimed that the petitioner was worse than all of the criminals and traitors in hell," did not deprive the defendant of a fair trial, given the lack of objection and the overwhelming proof of guilt) (internal quotation marks omitted).

**Ineffective Assistance of Counsel**

Bailey also argues that his trial counsel's failure to object to the incidents set out above constituted ineffective assistance of counsel because the lack of contemporaneous objections led to application of the plain-error rule. However, we typically do not address ineffective-assistance-of-counsel arguments on direct appeal. *See United States v. Wunder*, 919 F.2d 34, 37 (6th Cir.1990) ("As a general rule, a defendant may not raise ineffective assistance of counsel claims for the first time on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations."). Thus, the preferred mechanism for raising a claim of ineffective assistance of counsel remains a 28 U.S.C. § 2255 motion, although we "may choose to hear the issue on direct appeal if we find that the parties have adequately developed the record." *United States v. Ferguson*, 669 F.3d 756, 762 (6th Cir. 2012).

Both the government and Bailey argue that the ineffective-assistance claim could be adequately addressed based on the available record. In order to succeed on an ineffective-assistance-of-counsel claim, a defendant must show (1) that counsel's performance was deficient in that it "fell below an objective standard of reasonableness"; and (2) that the defendant was prejudiced as a result of his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88, 693 (1984). In order to establish prejudice, the record must show that counsel's performance was so deficient that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

This circuit has held that the failure of defense counsel to object to prosecutorial misconduct may qualify as deficient performance under the first prong of the *Strickland* test, if counsel's failure to object did not reflect an "objectively reasonable . . . trial strategy." *Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005) (internal punctuation omitted). Without a better-developed record, however, it would be difficult to determine at this stage whether the failure of Bailey's lawyer to object reflected a reasonable trial strategy or an unprofessional mistake. Moreover, the letter that Bailey wrote to the district judge complaining of his counsel's lack of knowledge of the federal rules suggests that there may be ineffective-assistance-of-counsel claims that Bailey has not articulated on appeal. In light of the fact that he may be restricted to "one bite of the apple" in terms of collateral challenges to his conviction in this case, equity appears to support the application of the general rule.

**CONCLUSION**

Although Bailey has alleged multiple instances of prosecutorial misconduct, we find none so serious as deprived him of a fair trial. In addition, we decline to review his claim of ineffective assistance of counsel at this time. For these reasons, we AFFIRM the district court's judgment.